(105 So. 348)

No. 27148.

**ELLETT et al. v. MOREFIELD et al.**

(July 13, 1925.)

*(Syllabus by Editorial Staff.)*

1. Corporations ⊜⟹313—President of selling corporation, purchasing at foreclosure sale under purchase-money mortgage, not decreed to hold for corporation.

Where the president of a corporation, selling its properties, but subsequently foreclosing a purchase-money mortgage, was adjudicatee at foreclosure sale, but his bid was sufficient to discharge entire debt due his company and there was nothing to prevent other stockholders from participating in the bidding, the property would not be decreed that of the company.

2. Corporations ⊜⟹610(2)—Corporation held not to have been improperly liquidated.

Corporation *held* not to have been improperly liquidated under Act No. 267 of 1914, § 28, where outstanding stock was called in, each shareholder surrendering certificate of stock received proportionate share of assets, and remaining directors and stockholders joined in the resolution to dissolve.

Appeal from First Judicial District Court, Parish of Caddo; E. P. Mills, Judge.

Action by T. R. Ellett and others against W. H. Morefield and others. From a judgment of dismissal, plaintiffs appeal. Affirmed.

Dickson & Denny, of Shreveport, for appellants.

J. G. Palmer and J. Fair Hardin, both of Shreveport, for appellees.

ROGERS, J. Plaintiffs, eight in number, were formerly stockholders of the Peerless Oil Company, Inc., which was organized in the year 1917. This corporation was a small concern, composed of only a few stockholders. Practically all the stock was owned by four men, namely, W. G. Strange, J. T. Tanner, W. H. Morefield, and Wade Hampton. Morefield was president, Strange was vice president and Tanner was secretary. Hampton was also connected with the company for a short time but this connection ceased when, on September 4, 1917, he sold his stock, consisting of 30 shares, to Strange.

The company was successful from the start, and in a very short time it accumulated some valuable oil properties. In January, 1919, in pursuance of a resolution of its stockholders, the properties of the corporation, together with certain properties owned by W. G. Strange and others, were sold to the Globe Oil Company for $750,000, on the basis of 60 per cent. of the purchase price to the Peerless Company and 40 per cent. of the purchase price to Strange and his co-owners. This sale was made partly for cash and partly on terms of credit.

The Globe Oil Company having failed to pay the two notes maturing last, the Peerless Oil Company, Inc., foreclosed its mortgage, and the properties were sold by the sheriff, under date of May 12, 1920, to W. G. Strange. The adjudicatee at this sale made a bid of an amount·sufficient to discharge the entire debt due to the foreclosing creditor, principal, interest, and costs, and to cover also the claims of certain furnishers of supplies against the leases.

Subsequently, all the outstanding stock of the Peerless Oil Company, consisting of 179.25 shares of the par value of $100 each, was called in, and, from the funds on hand, a dividend was declared and apportioned among the stockholders, whereby each stockholder received $4.665 for every dollar of the par value of the stock held by him. All the stockholders, except Strange, Morefield, and Tanner, received their dividends in cash, and surrendered their certificates of stock which were duly canceled. At this date, Strange, Morefield, and Tanner together owned 144 shares of the stock; Strange owning 80 shares, and Morefield and Tanner owning each 32 shares. After the sheriff's sale, Morefield and Tanner approached Strange with a proposition to be allowed to share in his purchase. Strange agreed, and accordingly he paid over to the sheriff an amount sufficient only to liquidate the·claims of the creditors and of the other stockholders and costs, taking over the properties in consideration thereof and in payment of the amounts due to Morefield, Tanner, and himself.

On August 12, 1920, Strange, Morefield, and Tanner, as the sole stockholders of the Peerless Oil Company, Inc., adopted a resolution consenting to the dissolution of the said corporation. This resolution was forwarded to the secretary of state, who thereafter issued a certificate of dissolution as provided in the last paragraph of section 28 of Act 267 of 1914,

This suit was filed on August 14, 1923. With the exception of Wade E. Hampton, plaintiffs had been the holders, in the aggregate, of 16½ shares of the capital stock of the Peerless Oil Company, Inc. As heretofore stated, the 30 shares of stock owned by Hampton had been transferred to Strange. The suit is against Strange, Tanner, Morefield, and R. R. Sutherland, who owned one share of stock, and who had been a director in the corporation.

Plaintiffs' petition consists of 32 paragraphs, and they also filed a supplemental petition, consisting of 8 paragraphs, in which numerous allegations and charges are made against the defendant.

The suit, however, involves, in the main, only three demands, with an alternative prayer, viz.

First, that the purchase at the sheriff's sale by W. G. Strange be decreed to have been made for the benefit of the Peerless Oil Company, Inc.

Secondly, that, inasmuch as the liquidation of the corporation was improperly made, the court appoint liquidators to wind up its affairs.

Thirdly, that defendants furnish a full accounting of the affairs of the said company.

In the alternative, plaintiffs pray for a judgment for their pro rata shares in any moneys of the Peerless Oil Company held by the defendants.

The court below rejected plaintiffs' demands and dismissed their suit, and from this judgment plaintiffs are prosecuting this appeal.

We will discuss these demands in the order in which we have stated them.

[1] 1. In support of their prayer that the properties purchased at the foreclosure sale be decreed to be properties of the Peerless Oil Company, plaintiffs rely upon the legal principle that officers and directors of a corporation are, in a sense, trustees, without right to participate in any agreement or com-

bination to divest the corporation of its property, or to seek their own profit at the expense of the company.

The argument might have some force if the adjudicatee at the sale was the president of, or director in, the Globe Oil Company, whose property was sold; but certainly it can have no application in the present case. Mr. Strange, so far as the record discloses, had no connection whatever with the Globe Oil Company. He was an officer of the Peerless Oil Company, whose properties had been sold to the Globe Oil Company, under a resolution of its stockholders, among whom, with the exception of Hampton whose stock had been previously disposed of, were the plaintiffs. Mr. Strange attended the sale, which was public and open, and which was made after the usual advertisements, in the interest of the Peerless Oil Company, in which he was an officer and large stockholder, to protect the interests of said company and its stockholders. He made only one bid, which was in an amount sufficient to discharge the debt due the Peerless Company, with costs, and certain additional claims by furnishers of supplies. Plaintiffs certainly could not require more than this. The fact that no other bidder appeared, and that no other bid was made, is a strong indication that Mr. Strange paid the full price for the property. There was nothing to prevent the plaintiffs from participating in the bidding if they had so desired, but they did not do so. In fact, they never even attended the sale. The effect of Mr. Strange's bid was to protect in full the interest of every stockholder in his company. If he was seeking to profit at their expense, it would have been a very easy matter for him to have started his bidding at a low figure. Non constat, in that event, he would not have been able to purchase the properties at a price much less than that at which they were adjudicated to him.

We do not find any basis for affording plaintiffs any relief under this demand of their action.

[2] 2. Nor do we find any ground for holding that the corporation was improperly liquidated. Each stockholder received his proportionate share of the assets. Upon the surrender and cancellation of the certificates of stock held by them, plaintiffs and the other stockholders ceased to have any interest in the company. At the time of the liquidation, there were only three directors and stockholders remaining, and they joined in the resolution to dissolve, and in the request to the secretary of state to issue the necessary certificate of dissolution. Their action seems to have been in accordance with the terms of section 28 of Act 267 of 1914.

Plaintiffs have not established any facts to warrant the court in appointing liquidators to wind up the company's affairs. From our examination of the record, we have been unable to discover any good reason why this should be done. So far as we are able to appreciate the facts as presented, it appears that the liquidation has been accomplished, and that the corporation has ceased to exist.

3. Plaintiffs have not shown that they suffered any loss by the alleged failure of defendants to account. As a matter of fact, they failed to support this allegation of their petition. The record shows the only stockholder that requested the privilege of examining the books was accorded that privilege, and that, with the assistance of his attorney, he availed himself of it. This was long prior to the present suit. Although the books were irregularly kept an audit thereof was made by a firm of accountants, and their report and statement was sent to each stockholder.

4. It is difficult to understand the nature of plaintiffs' complaints and demands under their alternative plea. They allege that the defendants had retained $116,000 for the payment of an income tax and had only used

$58,000 for that purpose. The evidence shows, however, that the tax in question was for the year 1919, which apparently was settled by two payments of $58,000 each, and that the whole amount of $116,000 was actually paid to the government. They complain that $50,000 was retained to pay state and parish taxes, but that only $2,500 was needed to discharge that obligation. No proof whatever was offered to sustain this allegation.

Plaintiffs also complain of certain other items, the amounts represented by which they allege should be distributed among the stockholders. The first is an item of $45,-731.91, shown on the trial balance of December 31, 1918. The assets represented by this item were, however, on July 1, 1919, according to the books, transferred to W. G. Strange et al., a kindred organization. It is not shown that this transfer was illegal or incorrect. An item showing expenditures of $61,402.91 is also attacked as having been unauthorized, and for the failure to charge a proportion of these costs to W. G. Strange et al. The expenditures covered by this item were for the ordinary operating expenses and supplies used in the development of the properties before their sale to the Globe Oil Company. It is not shown that they were excessive nor that the company did not receive an adequate return therefor. No good reason is shown why 40 per cent. of the amount should have been charged to W. G. Strange et al.

Plaintiffs claim that $170,250 was paid into the bank of Mooringsport for distribution as dividends among the stockholders. We have carefully examined the report of the accountant employed by plaintiffs, and nowhere on said report have we been able to find any reference to any such item; nor did the accountant testify in regard to any such bank deposit. The record, so far as we have examined it, and we have examined it carefully, does not show that there is any foundation for this contention of plaintiffs.

The information concerning the item of $83.620.13, which plaintiffs allege was an undistributed balance on hand, was obtained by plaintiffs' accountant from a letter of defendants' accountant, and not from the books of the corporation. Plaintiffs' accountant, however, admits that he was unable to verify this item, as no bank statement was submitted to him. This amount is clearly shown to have been on hand as the result of the marshaling of the assets of the Peerless Company, subsequent to the foreclosure sale of the properties of the Globe Oil Company, for the purpose of liquidating the said company. The amount in question was entirely paid out to the stockholders, as shown by the surrender and cancellation of their certificates of stock.

We see no error in the judgment appealed from, and it is therefore affirmed, at plaintiffs' cost.